IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

REID DRUCKER,

    Plaintiff,

v.

SIEBEL SYSTEMS, INC., SENIOR EXECUTIVE RETENTION BENEFIT PLAN, ORACLE USA, INC., successor in interest to Siebel Systems, Inc., and Does 1 through 10, inclusive,

    Defendants.

No. C 10-00320 WHA

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## INTRODUCTION

This action arose when plaintiff resigned his position as a senior executive with defendant Siebel Systems, Inc., after it was acquired by defendant Oracle USA, Inc. Plaintiff applied for severance benefits after termination of his employment and was denied. Plaintiff then commenced this action seeking declaratory judgment and damages for denial of benefits. Defendants moved to compel arbitration according to the terms of the benefit plan contract and stay the court proceeding pending arbitration. For the reasons stated below, defendants' motion is **GRANTED**.

## STATEMENT

In 2005, plaintiff Reid Drucker was a senior executive with defendant Siebel Systems, Inc. He held the position of Senior Vice President and General Manager, Communications,

1  Media and Energy.  As a senior executive, he was a participant in the Siebel Systems, Inc.,
2  Senior Executive Retention Benefit Plan.

3  The benefit plan generally provided severance pay to Siebel Systems senior executives
4  under certain circumstances.  In particular, Section 2(g) of the plan provided that participants
5  may receive benefits if there is a covered termination that occurs within twelve months after a
6  change of control of the entity.

7  On January 31, 2006, defendant Siebel System was acquired by defendant Oracle U.S.A.,
8  Inc.  The acquisition was considered a change of control under the plan.  On January 30, 2007,
9  plaintiff submitted his resignation, claiming that he had suffered a material reduction in duties
10 and responsibilities.  A material reduction in the participant's duties or responsibilities was one
11 of the circumstances under which plaintiff could claim benefits after termination of employment.

12 The plan contained an arbitration clause, Section 11, which provided:

> (a)  Any applicant's claim remaining unresolved after exhausting of the procedures in Section 10 (and to the extent permitted by law, any dispute concerning any breach or claimed breach of duty regarding the Plan) shall be settled solely by binding arbitration at the Company's principal place of business at the time of the arbitration, in accordance with the JAMS Arbitration Rules and Procedures.  The arbitrator, in reviewing the decision of the Plan Administrator pursuant to Section 10, shall apply the standard of a reviewing court under ERISA, namely that such decision shall be affirmed unless the arbitrator finds it to be arbitrary and capricious.  Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  *Each party to any dispute regarding the Plan shall pay the fees and costs of presenting his, her or its case in arbitration.  All other costs of arbitration, including the costs of any transcript of the proceedings, administrative fees, and the arbitrator's fees shall be borne by the Company.*
>
> (b)  Except as otherwise specifically provided in this Plan, the provisions of this Section 11 shall be absolutely exclusive for any and all purposes and fully applicable to each and every dispute regarding the Plan, including any claim which, if pursued through any state or federal court or administrative proceeding, would arise at law, in equity or pursuant to statutory, regulatory or common law rules, regardless of whether such claim would arise in contract, tort or under any other legal or equitable theory or basis.  *The arbitrator shall have jurisdiction and authority to award only Plan benefits and prejudgment interest; and apart from such benefits and interest, the arbitrator shall not have any authority or jurisdiction to make any award of any kind including, without limitation, compensatory damages, punitive damages, foreseeable or unforeseeable economic damages, damages for pain and*

2

> *suffering or emotional distress, adverse tax consequences or any other kind or form of damages.* The remedy, if any, awarded by such arbitrator shall be the sole and exclusive remedy for each and every claim which is subject to arbitration pursuant to this Section 11. *Any limitations on the relief that can be awarded by the arbitrator are in no way intended (i) to create rights or claims that can be asserted outside arbitration or (ii) in any other way to reduce the exclusivity of arbitration as the sole dispute resolution mechanism with respect to this Plan.*

(Req. for Judicial Notice Exh. A at 10–11) (emphasis added).[1]

The plan administrator denied plaintiff's claim for benefits and also denied his subsequent appeal. Following the denial of plaintiff's administrative appeal, plaintiff filed the instant action, asserting a claim for relief under Section 502 of ERISA, 29 U.S.C. 1132(a)(1)(B). After plaintiff filed this action, defendants requested that plaintiff stipulate to arbitration, pursuant to the arbitration provision in the plan. Plaintiff asked that defendants stipulate to a *de novo* standard of review for the arbitrator's review regarding the denial of his benefit claims. Defendants refused. Consequently, plaintiff also refused to stipulate to arbitration. Defendants then submitted the instant motion to compel arbitration and stay proceedings.

**ANALYSIS**

The Federal Arbitration Act requires federal courts to enforce arbitration agreements. A district court's role under the FAA is limited to determining (i) whether a valid agreement to arbitrate exists and if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc., v. Premier Diabetic Services, Ic.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

Plaintiff does not challenge the existence of an agreement to arbitrate. Rather, plaintiff challenges the enforceability of the arbitration provision (i) because the provision does not allow an arbitrator to award attorney's fees and thus prevents plaintiff from fully vindicating his statutory claims and (ii) because defendant Oracle is a "repeat player" before JAMS.

---

[1] This order finds that a copy of Siebel Systems, Inc. Senior Executive Retention Benefit Plan is properly the subject of judicial notice. Fed. R. Evid. 201.

3

1.  **ARBITRATION PROVISION TAKES AWAY PLAINTIFF'S RIGHT TO ATTORNEY'S FEES.**

    A.  **Attorney's Fees Are Necessary to Fully Vindicate ERISA Rights.**

Plaintiff challenges the arbitration provision in the benefit plan because it takes away plaintiff's nonwaivable statutory rights to attorney's fees if he were to prevail in the arbitration proceeding. Although policy considerations weigh in favor of arbitration in marginal cases, an enforceable arbitration clause must meet minimal standards of procedural fairness to be valid. Plaintiff has advanced the five factors in *Cole v. Burns International Security Services, et al.*, 105 F.3d 1465 (D.C. Cir. 1997), as the appropriate standard to analyze the enforceability of arbitration provision. Recently, this test was adopted by Judge M. Patel in this district in a similar decision, *Cleveland v. Oracle Corp., et al.*, 2007 U.S. Dist. Lexis 20910 (N.D.Cal. 2007), where the plaintiffs, also former senior Siebel Systems executives, challenged the enforceability of the identical arbitration provision. This order finds the *Cole* factors to be an appropriate standard.

The five *Cole* factors to determine whether an arbitration agreement is enforceable are whether the agreement:

1. Provides for neutral arbitrators;
2. Provides for more than minimal discovery;
3. Requires a written award;
4. *Provides for all of the types of relief that would otherwise be available in court;* and
5. Does not require employees to pay either unreasonable costs *or* expenses as a condition of access to the arbitration forum.

Plaintiff concedes that the arbitration provision meets all but the fourth *Cole* factor. Plaintiff contends that arbitration provision strips the arbitrator of the ability to award attorney's fees, which would be available in litigation, and thus does not satisfy the fourth *Cole* factor.

Defendants assert that the arbitration provision is valid because the attorney's fees provision of ERISA is a waivable right and cites *United States v. Mezzanatto*, 513 U.S. 196

4

1   (1995). This decision held that statutory rights are generally waivable. Defendants also point
2   to Judge Patel's decision in *Cleveland v. Oracle Corp., et al.*, 2007 U.S. Dist. Lexis 20910,
3   where Judge Patel found that there was no caselaw to support the plaintiffs' argument that
4   unavailability of attorney's fees was sufficient to void the identical arbitration provision also
5   at issue here.

6   Plaintiff cites *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984),
7   to support his argument that an award of attorney's fees under ERISA is not a waivable right.
8   Plaintiff contends that courts have held that awarding attorney's fees provisions in other
9   contexts — actions brought under the Petroleum Marking Practices Act and the
10  Labor-Management Reporting and Disclosure Act — is crucial and necessary to fully
11  vindicate the plaintiffs' statutory rights. *See Hall v. Cole*, 412 U.S. 1 (1973) (allowance of
12  attorney's fees under section 102 of the Labor-Management Reporting and Disclosure Act
13  is consistent with the purpose of the act); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244
14  (9th Cir. 1994) (an arbitration clause that expressly forfeits the plaintiff's right to
15  statutorily-mandated exemplary damages, statutorily-mandated attorney's fees and one-year
16  statute of limitations proscribes important statutory rights under the Petroleum Marketing
17  Practices Act and cannot be enforced). Plaintiff asserts that *Cleveland* relied on incorrect legal
18  analysis, and that the plaintiffs in *Cleveland* failed to cite *Smith, Graham Oil,* and *Hall* in their
19  brief; thus, Judge Patel did not have the benefit of these decisions while considering the same
20  issue.

21  Defendants argue that these decisions are distinguishable: *Hall v. Cole* and *Graham Oil*
22  *Co.* were not ERISA cases, and *Smith* did not specifically address whether attorney's fees could
23  be waived in an arbitration agreement. In *Smith*, the Ninth Circuit held that attorney's fees
24  should generally be allowed to the prevailing plaintiff. Crucially, the decision did not address
25  whether an award of attorney's fees under ERISA is a nonwaivable right, but focused on how to
26  apply the factors in deciding whether to award discretionary attorney's fees. *Graham Oil* held
27  that each of three statutory rights that were prohibited by the arbitration provision — exemplary
28  damages, attorney's fees, and one-year statute of limitations — was important to the

5

implementation of the Petroleum Marketing Practices Act, and found that the defendant ARCO was attempting to circumvent through arbitration Congress's intention in enacting the PMPA and refused to enforce the arbitration agreement. The Supreme Court in *Hall v. Cole* merely confirmed the district court's discretion to award attorney's fees under the Labor-Management Reporting and Disclosure Act, and recognized the importance of awarding attorney's fees to prevailing plaintiffs to offer them some financial protection against much more powerful labor unions.

Although plaintiff argues that these cases stand for the proposition that availability of attorney's fees is necessary to fully vindicate plaintiff's ERISA rights, and thus it is a nonwaivable statutory right, this order does not find plaintiff's argument persuasive. The court has not found any caselaw that has held that attorney's fees under ERISA is a nonwaivable right. In sum, this order declines to hold that attorney's fees under ERISA is a nonwaivable right. Accordingly, an alleged waiver of attorney's fees in the arbitration provision would not invalidate the provision.

### B.     The Plan Bars Award of Attorney's Fees.

Even if attorney's fees were a nonwaivable right, defendants assert that the benefit plan is ambiguous with respect to attorney's fees and that arbitrator *may* award attorney's fees. Prior to the adoption of the current benefit plan in August 2005, the previous benefit plan, adopted in May 2005, explicitly addressed the issue of attorney's fees. Section 7 of the earlier plan provided that:

> Section 7.  Payment of Attorneys' Fees.
>
> (a) The Company agrees to pay all costs and reasonable expenses, including reasonable attorneys' fees, incurred by an Eligible Employee with respect to an action (b) brought by or on behalf of the Eligible Employee to obtain any payment owed to the Eligible Employee pursuant to this Plan, or (ii) instituted by or in the name of the Company to interpret any of the terms of the Plan as they relate to the Company's obligations under the Plan.
>
> (b) Notwithstanding the foregoing, the Company shall not have an obligation to pay costs, expenses or attorneys' fees incurred by an Eligible Employee if (i) in an action initiated by or on behalf of the Eligible Employee, the arbitrator determines that each of the material assertions made by the Eligible Employee as a basis for such action was not made in good faith or was frivolous,

6

> (ii) in an action brought by or in the name of the Company, the arbitrator determines that each of the Eligible Employee's material defenses to such action was not made in good faith or was frivolous, or (iii) the arbitrator determines that the Eligible Employee is not otherwise entitled to be paid such costs, fees, and expenses.

Pursuant to the August 2005 amendment, Section 7 regarding attorney's fees was deleted in its entirety. The section regarding arbitration remained unchanged except for being renumbered and deleting a reference to Section 7.

Two interpretations of the arbitration provision are possible. One, advanced by plaintiff, is that although the language of the section governing arbitration did not change, its meaning was changed when the attorney's fees provision was deleted. The other, proposed by defendants, is that the arbitration provision was never intended to address attorney's fees, either before or after the adoption of amended plan in August 2005, because only Section 7 addressed attorney's fees. Defendants argue that because the language of the arbitration provision did not change in August 2005, its meaning did not change, and it is at least ambiguous as to whether the current arbitration provision bars attorney's fees. The decision in *Cleveland,* facing similar issues, found that the identical arbitration provision was silent as to whether an arbitrator could award attorney's fees. This order finds that there is ambiguity as to whether the benefit plan expressly bars attorney's fees and potentially invalidates the arbitration provision. Accordingly, this order declines to find the arbitration provision unenforceable for allegedly barring attorney's fees.

   **2.   DEFENDANT ORACLE IS A REPEAT PLAYER BEFORE JAMS.**

Plaintiff also asserts that defendant Oracle has participated in either 35 or 208 arbitrations before JAMS.[2] Plaintiff argues that the arbitration provision requiring the use of JAMS inherently stacks the deck in favor of defendant Oracle since it is Oracle that pays the cost of an arbitration. Plaintiff contends that the arbitration provision should require that no particular arbitration agency be used.

---

[2] Plaintiff's counsel declared that as of October 15, 2009, JAMS website listed 208 cases in which Oracle was a party before JAMS, but as of April 5, 2010, the JAMS website had changed, reflecting that there were 35 cases heard where Oracle was a party (Dean Decl. ¶3(b)).

7

Plaintiff also refers to another pending arbitration case against the same benefit plan. Defendants have refused to provide plaintiff with an interim decision from that case, where the arbitrator presumably ruled against the defendants on one of the issues in question.

To successfully claim repeat-player effect to invalidate an arbitration agreement, plaintiff must present "particularized evidence demonstrating impartiality." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006). Plaintiff has failed to present particular evidence of bias, and his sweeping and general allegations cannot support a finding that the arbitration agreement should not be enforced due to impartiality.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration and stay proceedings is **GRANTED**.

**IT IS SO ORDERED.**

Dated: April 30, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE